NOT DESIGNATED FOR PUBLICATION

No. 120,604

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL DEAN FORREST,
*Appellant*.

MEMORANDUM OPINION

Appeal from Montgomery District Court; F. WILLIAM CULLINS, judge. Opinion filed September 25, 2020. Affirmed in part and vacated in part.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Michael J. Duenes*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., STANDRIDGE, J., and MCANANY, S.J.

PER CURIAM: In opposition to the notion of letting "the punishment fit the crime," as the Mikado sings in Gilbert and Sullivan's operetta of the same name, Michael Forrest contends that the district court abused its discretion in not taking heed of the Kansas Legislature's broad policy pronouncements about punishment in K.S.A. 2019 Supp. 21-6601, which required the district court to take into account Forrest's particular characteristics and circumstances when considering his sentence following his conviction of aggravated indecent liberties with a child. Forrest also challenges the district court's order that he serve lifetime postrelease supervision.

1

*Procedural History*

In July 2017, the State charged Forrest with aggravated criminal sodomy and aggravated indecent liberties with a child who was less than 14 years old. Both crimes were Jessica's Law offenses calling for life sentences with no possibility of parole for 25 years. See K.S.A. 2019 Supp. 21-6627(c), (d).

The parties entered into a plea agreement under which Forrest agreed to plead no contest to aggravated indecent liberties with a child and the State agreed to dismiss the aggravated criminal sodomy charge. The State intended to recommend the imposition of the presumptive life sentence, while Forrest could ask the district court to impose a lesser punishment.

At the plea hearing that followed, Forrest pled no contest as agreed and the State dismissed the other charge as agreed. The district court found Forrest guilty of aggravated indecent liberties with a child and set the matter over for sentencing.

The following month, Dr. Robert Barnett, a clinical psychologist, performed a psychosexual evaluation of Forrest. In Dr. Barnett's opinion, Forrest did not appear to be a pedophile or a sexual predator. He concluded that there was no evidence of mental disease or defect, but he opined that Forrest would benefit from psychotherapy or counseling to address symptoms of depression which stemmed from the charges. Barnett noted that Forrest had a substance abuse problem—Forrest used cannabis daily and the drug ecstasy occasionally—but Barnett concluded that Forrest "appears to be a reasonably good candidate for probation or some type of community placement."

Relying heavily on Dr. Barnett's conclusions, Forrest moved the court for a dispositional departure sentence, a durational departure sentence, or a combination of both.

2

The court heard from several witnesses at Forrest's sentencing hearing. Dr. Barnett testified about his conclusions. He reiterated his belief that Forrest was neither a pedophile nor a sexual predator. After describing the recidivism rates, he also stated that he believed the likelihood of Forrest reoffending would be lower than the research suggests. The research Barnett referred to was the Static-99 test, which resulted in a 13% recidivism rate, and the Lamson and Bray study, which estimated a 6% recidivism rate. On questioning by the State about his conclusion that Forrest was not a pedophile or a sexual predator, Barrett admitted that he did not review the police reports in this case that showed that Forrest's victim was a 10-year-old prepubescent child. Barnett stated his conclusions were based on the results of testing and the answers that Forrest gave him.

The State's victim coordinator read victim impact statements from the victim's grandparents and the victim's mother.

Detective Derek Bryant, the State's lead investigator, testified about excerpts from numerous emails and letters that Forrest wrote while imprisoned in which he repeatedly mentioned how he had thought about the possibility of something happening between him and the victim after she turns 18. Forrest also mentioned that he had a sexual reaction when the victim "brushed against [him] a certain way."

In the writings, Forrest attempted to shift blame to the victim. He also blamed the victim's mother for putting the victim through "all the stress of court and those stupid tests and interviews." He alluded to his belief that the victim's mother would have been "just fine with everything" if she "understood this was all a mental problem." He also wrote that "I may have done the act, but [the victim's mother] wrote the script; put me in the role and pulled all the strings." Again referencing the victim's mother, he wrote that "If I had done it in front of you, you probably wouldn't have stopped me; you said that yourself." Detective Bryant testified that nothing in his investigation led him to believe

3

that there was any credibility to Forrest's claims that the victim's mother was involved or would have approved of what happened between Forrest and her daughter.

Forrest asked the court to depart from the presumptive life sentence. He pointed to Dr. Barnett's conclusions that he was neither a pedophile nor a sexual predator and pointed to the fact that he took responsibility for his actions by pleading no contest. He also noted his limited criminal history as a mitigating factor.

Before imposing a sentence, the district court stated that Forrest continued to blame the victim. The district court also cited the nature of Forrest's relationship with the victim, who lived with Forrest and looked to him as a father-figure. The district court discounted the testimony of Dr. Barnett because he failed to look at anything aside from Forrest's responses when formulating his report and failed to consider the circumstances of the crime. The district court also believed that Forrest's writings showed a continued interest in the victim. Finding Forrest's evidence not to be substantial and compelling, the district court denied Forrest's motion for a departure and sentenced him to a life sentence with no chance of parole for 25 years and lifetime postrelease supervision. This appeal followed.

*Failure to Depart*

Forrest's first contention is that the district court abused its discretion by imposing the presumptive life sentence for his aggravated indecent liberties conviction. We review the district court's decision not to impose a mitigated sentence for any abuse of the court's discretion. *State v. Powell*, 308 Kan. 895, 902, 425 P.3d 309 (2018). The district court abuses its discretion if its ruling is based on an error of fact or law or if its ruling is one which no reasonable judge would impose. 308 Kan. at 902-03.

In *State v. Jolly*, 301 Kan. 313, Syl. ¶ 5, 342 P.3d 935 (2015), our Supreme Court explained that district courts, when considering a departure from a Jessica's Law sentence, must first assess the mitigating factors without weighing them against any aggravating circumstances. Then, looking to the facts of the case, the district court determines whether the mitigating circumstances are substantial and compelling so as to warrant a departure from the presumptive sentence. 301 Kan. 313, Syl. ¶ 5.

Forrest contends the district court abused its discretion by failing to heed the Kansas Legislature's broad policy pronouncements about punishment in K.S.A. 2019 Supp. 21-6601. The statute provides:

"K.S.A. 2019 Supp. 21-6601 through 21-6629, and amendments thereto, shall be liberally construed to the end that persons convicted of crime shall be dealt with in accordance with their individual characteristics, circumstances, needs and potentialities as revealed by case studies; that dangerous offenders shall be correctively treated in custody for long terms as needed; and that other offenders shall be dealt with by probation, suspended sentence, fine or assignment to a community correctional services program whenever such disposition appears practicable and not detrimental to the needs of public safety and the welfare of the offender, or shall be committed for at least a minimum term within the limits provided by law." K.S.A. 2019 Supp. 21-6601.

Forrest contends the district court failed to consider how the policies outlined in K.S.A. 2019 Supp. 21-6601 work in conjunction with K.S.A. 2019 Supp. 21-6627, which is the statute that governs sentencing in Jessica's Law cases. Relying on Dr. Barnett's report and testimony, Forrest contends that if the district court had liberally construed K.S.A. 2019 Supp. 21-6627(d) as K.S.A. 2019 Supp. 21-6601 requires, the district court would have imposed a sentence less than life.

But Forrest fails to point to any evidence that the district court failed to consider the mitigating circumstances he presented. To the contrary, after considering Forrest's

evidence the district court simply stated that it did not find the reasons substantial and compelling. The district court went on to explain why it did not find the reasons that Forrest presented substantial and compelling, though it was under no obligation to do so. See K.S.A. 2019 Supp. 21-6627(d)(1); see also *Powell*, 308 Kan at 908 (holding that K.S.A. 2019 Supp. 21-6627[d][1] only requires a district court to state reasons on the record if it finds them substantial and compelling and departs from the minimum sentence).

For his last point on this departure issue, Forrest essentially argues that since he presented expert testimony that he posed a low risk to public safety and the State did not refute Dr. Barnett's testimony with its own expert, the district court must mitigate his sentence and to do otherwise constitutes an abuse of discretion. We find no support for this argument, and Forrest provides none. The district court simply found other evidence at the hearing more persuasive than Dr. Barnett's testimony.

We find no abuse of discretion in the district court rejecting Forrest's request for a departure sentence.

*Lifetime Postrelease Supervision*

For his second claim of error, Forrest contends that the district court erred when it imposed lifetime postrelease supervision as part of his sentence. The State agrees that the district court erred. Forrest acknowledges that he did not object at the sentencing hearing and is raising the issue for the first time on appeal. But K.S.A. 2019 Supp. 22-3504(a) allows us to correct an illegal sentence at any time.

Our review standard is stated in *State v. Cash*, 293 Kan. 326, 330, 263 P.3d 786 (2011): "Whether a sentence is illegal is an issue of statutory interpretation and subject to unlimited review as a question of law."

6

Here, after imposing Forrest's life sentence, the district court stated: "He'll be eligible for parole after 25 years. Once he is placed on parole, he will be subject to doing lifetime post-release supervision."

Our Supreme Court has held that "'[a] sentencing court has no authority to order a term of postrelease supervision in conjunction with an off-grid, indeterminate life sentence.'" *State v. Edwards*, 309 Kan. 830, 835, 440 P.3d 557 (2019) (quoting *State v. Summers*, 293 Kan. 819, Syl. ¶ 6, 272 P.3d 1 [2012]). Instead, defendants sentenced to imprisonment pursuant to K.S.A. 2019 Supp. 21-6627 are subject to lifetime parole. K.S.A. 2019 Supp. 22-3717(u); *Edwards*, 309 Kan. at 835; *Cash*, 293 Kan. at 330. Accordingly, we must vacate the district court's order for lifetime postrelease supervision.

Affirmed in part and vacated in part.